UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENDAN WILKES, on behalf of himself and all others similarly situated, and on behalf of the general public,<br><br>Plaintiff,<br><br>v.<br><br>BENIHANA, INC., BENIHANA NATIONAL CORP., BENIHANA CARLSBAD CORP., and DOES 1-50,<br><br>Defendants. | Case No.: 16cv2219 JM (DHB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** |

  Defendants Benihana Inc., Benihana National Corp., and Benihana Carlsbad Corp. (collectively, "Benihana") move the court to dismiss the second amended class action complaint ("SAC") of Plaintiff Brendan Wilkes for failure to state a claim. (Doc. No. 16.) For the following reasons, the court grants the motion in part and denies the motion in part.

## BACKGROUND

  Plaintiff is a former server at a Benihana restaurant in Carlsbad, California. He held that position from July 2015 to June 2016. Benihana operates the nation's largest chain of Japanese teppanyaki and sushi restaurants, with seventy-three restaurants

1

nationwide, including seventeen in California and two in San Diego County. On July 19, 2016, Plaintiff filed a first amended class action complaint in San Diego Superior Court. On September 1, 2016, Benihana removed the case to this court pursuant to the Class Action Fairness Act. (Doc. No. 1.) Plaintiff filed the SAC on September 27, alleging four causes of action: (1) conversion; (2) failure to maintain accurate records and provide accurate itemized wage statements; (3) violations of California Business & Professions Code section 17200 ("section 17200"); and (4) for penalties under California's Private Attorneys General Act ("PAGA"). (Doc. No. 11.)

All four causes of action in the SAC arise out of Benihana's allegedly unlawful tip-pooling policy, and the putative class consists of current and former servers who, within the previous four years, have been required to abide by that policy—a group that exceeds 1,000 individuals. Under Benihana's tip-pooling policy, Benihana collects all tips left by customers and pays out the following sums: 8.5% of teppan sales to the teppan chef; 4% of sushi sales to the sushi chef; 4.5% of liquor, beer, and wine sales to the bartender; and 1% of teppan and sushi sales to the busser.[1] Plaintiff claims that, in so doing, Benihana "obtains an illegal 'tip credit' against wages it owes to chefs, bartenders, and bussers. By operation of this scheme, servers' tips are diverted to pay the wages of other Benihana employees at specified rates." (Doc. No. 11 ¶ 22.) Plaintiff also claims that "[i]nstead of spreading the risk of low tipping patrons among all employees, which is a purpose underlying a lawful tip pool, Benihana's tip credit scheme places that risk solely on the shoulders of Benihana's servers because it is based upon a percentage of gross sales; not upon a percentage of total tips." (Id. ¶ 30.)

---

[1] Plaintiff lays out the details of the tip-pooling policy in the SAC, and Benihana attached the policy to its motion to dismiss. Thus, the court may decide this Rule 12(b)(6) motion on the face of the SAC alone, or, because no party questions its authenticity, the court may refer to the policy under the incorporation by reference doctrine. Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005).

**LEGAL STANDARDS**

A Rule 12(b)(6) motion to dismiss for failure to state a claim challenges the legal sufficiency of the pleadings. To overcome such a motion, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Facts merely consistent with a defendant's liability are insufficient to survive a motion to dismiss because they establish only that the allegations are possible rather than plausible. Id. at 678–79. The court must accept as true the facts alleged in a well-pleaded complaint, although mere legal conclusions are not entitled to an assumption of truth. Id. Finally, the court must construe the pleading in the light most favorable to the non-moving party. Concha v. London, 62 F.3d 1493, 1500 (9th Cir. 1995).

**DISCUSSION**

Plaintiff's allegations primarily stem from Benihana's operation of a tip-pooling policy. California Labor Code section 351 addresses tips and tip pooling, but does not provide a private right of action. Lu v. Hawaiian Gardens Casino, Inc., 50 Cal. 4th 592, 603 (2010). Hence, Plaintiff brings his claims on other grounds.

    **A.**    **The Law on Tip Pooling**

California Labor Code section 351 provides:

> No employer or agent shall collect, take, or receive any gratuity or a part thereof that is paid, given to, or left for an employee by a patron, or deduct any amount from wages due an employee on account of a gratuity, or require an employee to credit the amount, or any part thereof, of a gratuity against and as a part of the wages due the employee from the employer. Every gratuity is hereby declared to be the sole property of the employee or employees to whom it was paid, given, or left for.

"'Gratuity' includes any tip, gratuity, money, or part thereof that has been paid or given to or left for an employee by a patron of a business over and above the actual

amount due the business for services rendered or for goods, food, drink, or articles sold or served to the patron." Cal. Lab. Code § 350(e).

California courts have consistently held that, based on the language of Labor Code sections 350 and 351, tip pooling is lawful in the state under certain circumstances. See, e.g., Leighton v. Old Heidelberg, Ltd., 219 Cal. App. 3d 1062 (1990); Etheridge v. Reins Int'l California, Inc., 172 Cal. App. 4th 908 (2009); Budrow v. Dave & Buster's of California, Inc., 171 Cal. App. 4th 875 (2009); Louis v. McCormick & Schmick Rest. Corp., 460 F. Supp. 2d 1153 (C.D. Cal. 2006). Each of those cases involved the employer's right to require an employee to contribute a portion of tips received to a tip pool shared by other employees.

In Leighton, a server argued that her employer's tip-pooling policy violated section 351's requirement that an employer not "collect, take, or receive any part of a gratuity left for an employee. . . ." 219 Cal. App. 3d at 1068. The court rejected that argument, noting that the tip was not necessarily the server's "personal property" because a customer generally "does not really care who benefits from the gratuity he leaves, as long as the employer does not pocket it." Id. at 1069. The court stated that a gratuity left for an employee actually belongs to all of the employees "who contributed to the service of that patron." Id. at 1072 n.6. Thus, the court concluded, tip pooling does not violate section 351 so long as the employees, rather than the employer, benefit from the tips. Id. at 1068–71.

The Leighton court also discussed the public policy justifications for tip pools. Id. at 1069–71. The court stated that its "ruling allows for a fair distribution of the gratuity to all those who earned it by contributing to the service afforded the patron, which sharing can only promote harmony among the employees, provide a peaceful environment in which to work and improve service to the public." Id. at 1072 n.6. Moreover, as the court explained, "[a]n employer must be able to exercise control over his business to ensure an equitable sharing of gratuities in order to promote peace and harmony among employees and provide good service to the public. To deprive a

4

restauranteur of the ability to regulate and control the conduct of his own business, leaves the door open to anarchy in the restaurant industry." Id. at 1071.

Other cases have extended Leighton to situations where the employer requires servers to share their tips with restaurant employees who do not provide services directly to the customer's table (e.g., bartenders and dishwashers). See Etheridge, 172 Cal. App. 4th at 923; Budrow, 171 Cal. App. 4th at 884. In those cases, the courts reasoned that allowing tip pooling along the entire customer service chain promotes the public policy underlying section 351. As the Budrow court stated, "Section 351 provides that the tip must have been 'paid, given to, or left for' the employee. Given that restaurants differ, there must be flexibility in determining the employees that the tip was 'paid, given to, or left for.'" 171 Cal. App. 4th at 882.

### B. Plaintiff's Four Causes of Action

The court addresses each of Plaintiff's four causes of action in the order he presents them.

#### 1. Conversion

Plaintiff's first cause of action is for conversion, (Doc. No. 11 at 16), for which he seeks punitive damages, (id. at 25, ¶ 3). "Conversion is the wrongful exercise of dominion over the property of another." Welco Elecs., Inc. v. Mora, 223 Cal. App. 4th 202, 208 (2014), reh'g denied (Feb. 19, 2014). The elements of conversion are: "(1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." Id. "Money may be the subject of conversion if the claim involves a specific, identifiable sum." Id.

In Avidor v. Sutter's Place, Inc., 212 Cal. App. 4th 1439, 1452–53 (2013), the California Court of Appeal addressed a conversion claim in a tip-pooling case. The court held that casino dealers could not assert a conversion claim "without a threshold showing that the money in the tip pool belonged to them. It did not." Id. at 1453. "The dealers acknowledged and agreed to the condition of employment that they would . . .

contribut[e] a specified amount of their accumulated tips to the tip pool. They understood that this amount was not going to be returned to or kept for them, but would be distributed to other casino employees." Id. "Because this arrangement did not violate section 351, the trial court correctly determined, based on undisputed facts, that the dealers did not have ownership or possessory rights in that money." Id. Avidor is therefore consistent with other California cases holding that a tip is not the server's personal property, but instead the property of all employees involved in serving the patron, see, e.g., Leighton, 219 Cal. App. 3d at 1069–70, and as long as the tip pool is lawful, there can be no claim for conversion.

The same would appear to be true in this case. If Benihana's tip pool is eventually found to be lawful, the tips Plaintiff received belonged to all employees in the tip pool, and as such, Plaintiff likely cannot allege an ownership or possessory interest sufficient to support a claim for conversion. The court is not presently deciding whether Benihana's tip pool is lawful, however. At this stage, the court is merely deciding whether Plaintiff's claims can withstand a motion to dismiss. As discussed below, the court finds that, accepting Plaintiff's factual allegations and resolving inferences in his favor, Plaintiff has plausibly pleaded a violation of section 17200 and may proceed on that claim. Accordingly, Plaintiff must logically be able to proceed with his conversion claim, as well, unless there are other reasons justifying dismissal.

Benihana does provide three additional reasons to dismiss Plaintiff's conversion claim. The court does not find any of those reasons persuasive, however, especially at the motion to dismiss stage. First, Benihana contends that Plaintiff's knowledge of the tip-pooling policy at the time of his hire was tantamount to consent, which is a complete defense to conversion. Yet Benihana provided no support for that position, which, stated differently, amounts to the argument that a plaintiff forfeits the ability to bring a conversion claim in California when he enters into an ultimately illegal contract. In the absence of sound authority supporting that position, the court is not willing to adopt it now. Second, Benihana argues that Plaintiff did not and cannot allege a specific,

identifiable sum of money that Benihana converted. While Plaintiff did not and could not allege in the SAC the exact amount converted, he did provide a means for identifying that figure through Benihana's recordkeeping procedures. (See Doc. No. 11 ¶¶ 60–63.) Third, Benihana maintains that claims for conversion cannot be based on alleged statutory violations of the California Labor Code, reasoning that the California Supreme Court's statement in Lu—that there is "no apparent reason why other remedies [apart from suing under Labor Code section 351], such as a common law action for conversion, may not be available under appropriate circumstances"—is merely dicta. (Doc. No. 16-1 at 11–13 (citing 50 Cal. 4th at 603–04).) That is true. Nevertheless, it remains the best and most current statement on that point, and it informs the court's decision at this juncture that Plaintiff may proceed with his conversion claim.

In sum, the court denies Benihana's motion to dismiss this claim.

### 2. Failure to Maintain Accurate Records and Provide Accurate Wage Statements

In his second cause of action, Plaintiff cites numerous sections of the Labor Code in generally alleging that his wage statements "do not explain the operation, effect of, or formula for the 'tip pool'; do not show any resultant deductions by category of employee . . . , shift, or day; and do not show any incentives or resultant additional pay earned by participating in the 'tip pool.'" (Doc. No. 11 ¶ 39.) Plaintiff also alleges that Benihana did not list "tip 'deductions' pursuant to Benihana policy . . . in a non-aggregated form on Plaintiff's wage statements[, and] Plaintiff never provided a written order authorizing the deductions to be aggregated." (Id.) Although it is unclear, Plaintiff appears to allege that Benihana has failed to maintain accurate records and provide accurate itemized wage statements irrespective of the tip-pooling policy.

As an initial matter, all the sections Plaintiff cites that deal with wages, not tips, are irrelevant to his claims. While Plaintiff asserts that distributions from the tip pool to non-servers were wages for those non-servers, he does not allege that the tips retained by the servers—the only employees included in his proposed class—were wages for those

7

servers.[2]  Thus, Plaintiff's reference to Labor Code section 226(a), for example, which requires employers to provide wage statements that show gross wages, total hours worked, and other specified information, is beside the point.  Section 226(a) does not require employers to include tips, or tip outs, on their wage statements.  Similarly, sections 1174(c)–(d) require an employer to keep records showing the names and addresses of all employees, their hours worked, and their wages and piece-rate units earned.  Because Plaintiff's allegations concern his tips, not his wages, and he does not allege that Benihana failed to keep the required background and wage information, these sections also do not appear to have any bearing on the case.[3]

     Of the sections Plaintiff cites, only sections 353 and 354 deal with tips, and Plaintiff fails to state a plausible claim under either.  Section 353 requires employers to keep accurate records of all tips received, "whether received directly from the employee or indirectly by means of deductions from the wages of the employee or otherwise."  But Plaintiff does not explain how Benihana allegedly violated that section.  At best, the claim appears duplicative of Plaintiff's general allegation—that Benihana is retaining tips from servers to use as wages.  Even if that is the case, though, there is no indication that Benihana is failing to keep accurate records of the funds it retains for that purpose.  In fact, it almost certainly is, as distributing those funds requires a precise accounting.  And section 354, which provides that employers who violate the Labor Code's tip provisions are guilty of a misdemeanor, has no bearing on Plaintiff's second cause of action.

     Accordingly, because Plaintiff fails to plausibly allege that Benihana has violated any provision cited in his second cause of action, the court dismisses this count with leave to amend.

---

[2] To the extent any of Plaintiff's claims relate to the wage statements of non-servers, Plaintiff lacks standing to make those claims.

[3] In addition, Benihana's tip-pooling policy explicitly provides that employees "are entitled to see their own tip share and how it was calculated."  (Doc. No. 16-2 at 9.)

### 3. Violation of section 17200

Section 17200, California's unfair competition law, "prohibits any unfair competition, which means 'any unlawful, unfair or fraudulent business act or practice.'" In re Pomona Valley Med. Group, 476 F.3d 665, 674 (9th Cir. 2007) (quoting Cal. Bus. & Prof. Code § 17200, et seq.). Section 17200's coverage is "sweeping," and its standard for wrongful business conduct is "intentionally broad." In re First Alliance Mortg. Co., 471 F.3d 977, 995 (9th Cir. 2006). Each prong of section 17200 provides a separate and distinct theory of liability. Lozano v. AT & T Wireless Servs., Inc., 504 F.3d 718, 731 (9th Cir. 2007). "Injunctions are the primary form of relief available under [section 17200] to protect consumers from unfair business practices, while restitution is a type of ancillary relief." Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 337 (2011).

Plaintiff alleges that Benihana violated section 17200 because it violated Labor Code section 351. In support of that argument, Plaintiff repeatedly characterizes the payments to non-servers as "wages" that Benihana is "obligated" to pay. (E.g., Doc. No. 17 at 7.) As Plaintiff puts it in the SAC, "[w]hen the tip pool is insufficient to defray the percentage wage payments owed by Benihana to chefs, bartenders, and bussers, Benihana is forced to pay the shortfall." (Doc. No. 11 at 12, ¶ 32.) Put another way, Benihana always owes these percentages to non-servers, and it does not matter whether there are tips available to cover them.

That, if true, makes those payments more akin to wages than tips, which in turn means that Benihana is funding the wages of non-servers with tips contributed by servers—conduct that at least plausibly violates Labor Code section 351 because Benihana would be "collect[ing], tak[ing], or receiv[ing]" a tip left for an employee and using that tip for its own benefit: to pay compensation to non-servers. See Leighton, 219 Cal. App. 3d at 1068–69. And for the purpose of deciding a Rule 12(b)(6) motion to dismiss, the court must assume that is true, despite Benihana's rejoinder that it "is

completely false." (Doc. No. 18 at 4 n.1.)[4]  Should Benihana have classwide, admissible evidence that this is not the case, a motion for summary judgment may be appropriate.[5]

### 4. Claim for PAGA penalties

Plaintiff's claim for PAGA penalties is derivative of his other claims under the Labor Code and rises or falls with them.  As such, the court denies Benihana's motion to dismiss Plaintiff's claim for PAGA penalties based on violations of Labor Code section 351, see Cal. Lab. Code § 2699.5; Etheridge, 172 Cal. App. 4th at 911 n.6, but dismisses Plaintiff's claims for PAGA penalties under the Labor Code sections referenced in Plaintiff's second cause of action.

## CONCLUSION

For the foregoing reasons, the court denies Benihana's motion to dismiss Plaintiff's first, third, and fourth causes of action, dismisses Plaintiff's second cause of action with leave to amend, and denies Benihana's motion to strike Plaintiff's claim for punitive damages.  Should Plaintiff elect to file a third amended complaint, he must do so within twenty days of the filing date of this order.

IT IS SO ORDERED.

DATED: November 29, 2016

JEFFREY T. MILLER
United States District Judge

---

[4] In fact, nothing in the tip-pooling policy indicates that Benihana must make those payments in the absence of tip-pool funds.  The policy merely states: "**Under this policy no employee shall be required at any time to tip out from his/her own pocket should tips received total less than the applicable percentages in the tip out chart.**"  (Doc. No. 16-2 at 9 (emphasis in original).)

[5] Because the court finds that Plaintiff has plausibly pled a violation of Labor Code section 351 under this rationale, the court does not address at this time Benihana's additional arguments that its policy (1) is not unlawful because it is based on net sales, (2) is fair and equitable, (3) is not an improper tip credit, and (4) does not serve as a fraud on the public.