1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                  SOUTHERN DISTRICT OF CALIFORNIA
10

11   BRENDAN WILKES, on behalf of              Case No.: 16cv2219 JM (DHB)
12   himself and all others similarly situated,
     and on behalf of the general public,       **ORDER GRANTING DEFENDANTS'**
13                                   Plaintiff,  **MOTION TO DISMISS**
                                                 **PLAINTIFF'S THIRD AMENDED**
14   v.                                          **COMPLAINT**
15   BENIHANA, INC., BENIHANA
16   NATIONAL CORP., BENIHANA
     CARLSBAD CORP., and DOES 1-50,
17                                  Defendants.
18

19

20          Defendants Benihana Inc., Benihana National Corp., and Benihana Carlsbad Corp.
21   (collectively, "Benihana") move the court to dismiss the third amended class action
22   complaint ("TAC") of Plaintiff Brendan Wilkes for failure to state a claim.  (Doc. No.
23   37.)  The court finds the matter appropriate for decision without oral argument pursuant
24   to Civil Local Rule 7.1(d)(1), and for the following reasons grants the motion and
25   dismisses the TAC without leave to amend.
26                                   **BACKGROUND**
27          Plaintiff is a former server at a Benihana restaurant in Carlsbad, California.  He
28   held that position from July 2015 to June 2016.  Benihana operates the nation's largest

                                           1

chain of Japanese teppanyaki and sushi restaurants, with seventy-three restaurants nationwide, including seventeen in California and two in San Diego County.

On July 19, 2016, Plaintiff filed a first amended class action complaint in San Diego Superior Court. On September 1, 2016, Benihana removed the case to this court pursuant to the Class Action Fairness Act. (Doc. No. 1.) Shortly thereafter, Plaintiff filed a second amended complaint, alleging four causes of action: (1) conversion; (2) failure to maintain accurate records and provide accurate itemized wage statements; (3) violations of California Business & Professions Code section 17200 ("section 17200"); and (4) for penalties under California's Private Attorneys General Act ("PAGA"). (Doc. No. 11.) All four causes of action stemmed from Benihana's purportedly unlawful tip-pooling policy ("the Policy"). Under the Policy, Benihana collects all tips left by customers and pays out the following sums: 8.5% of teppan sales to the teppan chef; 4% of sushi sales to the sushi chef; 4.5% of liquor, beer, and wine sales to the bartender; and 1% of teppan and sushi sales to the busser. Plaintiff alleged that the Policy was improper in a number of ways, including that it allowed Benihana to pay non-servers' wages using servers' tips. (See Doc. No. 11 ¶ 22.)

Benihana moved to dismiss the second amended complaint for failure to state a claim. (Doc. No. 16.) On November 29, 2016, the court ruled on the motion. (Doc. No. 23.) The court dismissed the second cause of action (for failure to maintain accurate records and provide accurate wage statements), but declined to dismiss the first, third, and fourth causes of action based on Plaintiff's allegation that "[w]hen the tip pool is insufficient to defray the percentage wage payments owed by Benihana to chefs, bartenders, and bussers, Benihana is forced to pay the shortfall." (See Doc. No. 11 at 12, ¶ 32.) Taking that allegation as true, the court reasoned that those payments resembled wages, not tips, and therefore Benihana was "funding the wages of non-servers with tips contributed by servers." The court found that such conduct at least plausibly violates California Labor Code section 351 ("section 351"), thus supporting Plaintiff's claims for conversion, violation of section 17200, and PAGA penalties. (Doc. No. 23 at 9.)

Plaintiff filed the TAC on January 18, 2017, on behalf of himself and a putative class of current and former servers who, within the previous four years, have been required to abide by the Policy—a group that exceeds 1,000 individuals.  (Doc. No. 36.) The TAC once again centers on the Policy,[1] alleging three causes of action: (1) conversion; (2) violations of section 17200; and (3) PAGA penalties.[2]  But Plaintiff "omitted allegations from his TAC that Benihana makes up the shortfall when tips are insufficient to defray the percentage wage payments owed to chefs, bartenders, and bussers."  (Doc. No. 39 at 7.)  Instead, he alleged that the percentage payments to non-servers are "paid from the tip pool first if funds are available."  (Doc. No. 36 ¶ 32.)

Stripped of its plainly conclusory language, for example that "Benihana diverts money from its mandatory 'tip pool' to pay . . . promised . . . wages to chefs, bartenders, and bussers," (id. ¶ 28), the TAC can be summarized as follows: the Policy is mandatory; as part of the Policy, Benihana promises a fixed percentage of food and beverage sales to its chefs, bartenders, and bussers; the Policy provides for an unlawful "tip credit" and "de facto tip credit" because Benihana can use tips to subsidize the sub-market wages it pays non-servers, thereby lowering its payroll expenses while still attracting and retaining qualified employees; and because of the Policy's structure, servers can end up with little or none of each tip, a result that is unfair, unreasonable, and contrary to Benihana's own promise that "tips left by guests should be shared in a manner that is equitable and fair to all team members participating in the guest experience."  (See Doc. No. 39 at 8–9 (citing the TAC).)

///

---

[1] Plaintiff lays out the details of the Policy in the TAC, and Benihana attached it as Exhibit A to its motion to dismiss.  Because no party questions the authenticity of the Policy, the court may refer to it under the incorporation by reference doctrine, Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005), or based on Benihana's unopposed request for judicial notice, (see Doc. No. 37-2 at 3).

[2] Though the court permitted Plaintiff to amend his second cause of action, he did not re-plead that claim in the TAC.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## LEGAL STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of the pleadings.  To overcome such a motion, the complaint must contain "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Facts merely consistent with a defendant's liability are insufficient to survive a motion to dismiss because they establish only that the allegations are possible rather than plausible.  Id. at 678–79.  The court must accept as true the facts alleged in a well-pleaded complaint, but mere legal conclusions are not entitled to an assumption of truth. Id.  The court must construe the pleading in the light most favorable to the non-moving party.  Concha v. London, 62 F.3d 1493, 1500 (9th Cir. 1995).

## DISCUSSION

### A.    Relevant Law

To understand the issues involved in this case, it is helpful to first review the nature of tip pooling and tip credits, and California law with respect to each.

#### 1.    Tip Pooling

California Labor Code section 351 provides:

> No employer or agent shall collect, take, or receive any gratuity or a part thereof that is paid, given to, or left for an employee by a patron, or deduct any amount from wages due an employee on account of a gratuity, or require an employee to credit the amount, or any part thereof, of a gratuity against and as a part of the wages due the employee from the employer.  Every gratuity is hereby declared to be the sole property of the employee or employees to whom it was paid, given, or left for.

"'Gratuity' includes any tip, gratuity, money, or part thereof that has been paid or given to or left for an employee by a patron of a business over and above the actual

4

amount due the business for services rendered or for goods, food, drink, or articles sold or served to the patron."  Cal. Lab. Code § 350(e).

California courts have consistently held that, based on the language of Labor Code sections 350 and 351, tip pooling is lawful in the state under certain circumstances.  See, e.g., Leighton v. Old Heidelberg, Ltd., 219 Cal. App. 3d 1062 (1990); Etheridge v. Reins Int'l California, Inc., 172 Cal. App. 4th 908 (2009); Budrow v. Dave & Buster's of California, Inc., 171 Cal. App. 4th 875 (2009); Louis v. McCormick & Schmick Rest. Corp., 460 F. Supp. 2d 1153 (C.D. Cal. 2006).  Each of those cases involved the employer's right to require an employee to contribute a portion of tips received to a tip pool shared by other employees.

In Leighton, a server argued that her employer's tip-pooling policy violated section 351's requirement that an employer not "collect, take, or receive any part of a gratuity left for an employee. . . ."  219 Cal. App. 3d at 1068.  The court rejected that argument, noting that the tip was not necessarily the server's "personal property" because a customer generally "does not really care who benefits from the gratuity he leaves, as long as the employer does not pocket it."  Id. at 1069.  The court stated that a gratuity left for an employee actually belongs to all of the employees "who contributed to the service of that patron."  Id. at 1072 n.6.  Thus, the court concluded, tip pooling does not violate section 351 so long as the employees, rather than the employer, benefit from the tips.  Id. at 1068–71.

The Leighton court also discussed the public policy justifications for tip pools.  Id. at 1069–71.  The court stated that its "ruling allows for a fair distribution of the gratuity to all those who earned it by contributing to the service afforded the patron, which sharing can only promote harmony among the employees, provide a peaceful environment in which to work and improve service to the public."  Id. at 1072 n.6.  Moreover, as the court explained, "[a]n employer must be able to exercise control over his business to ensure an equitable sharing of gratuities in order to promote peace and harmony among employees and provide good service to the public.  To deprive a

restauranteur of the ability to regulate and control the conduct of his own business, leaves the door open to anarchy in the restaurant industry." Id. at 1071.

Other cases have extended Leighton to situations where the employer requires servers to share their tips with restaurant employees who do not provide services directly to the customer's table (e.g., bartenders and dishwashers). See Etheridge, 172 Cal. App. 4th at 923; Budrow, 171 Cal. App. 4th at 884. In those cases, the courts reasoned that allowing tip pooling along the entire customer service chain promotes the public policy underlying section 351. As the Budrow court stated, "Section 351 provides that the tip must have been 'paid, given to, or left for' the employee. Given that restaurants differ, there must be flexibility in determining the employees that the tip was 'paid, given to, or left for.'" 171 Cal. App. 4th at 882.

### 2. Tip Credits

Tip credits are different. When an employer uses a tip credit, it pays a tipped employee a wage lower than it would be obligated to pay if the employee did not receive tips. "In other words . . . the employer pays the employee less than minimum wage, with the understanding that the employee's tips will make up the difference." Etheridge, 172 Cal. App. 4th at 915. At one time, California permitted tip credits against minimum wage, but in 1975 the Legislature enacted section 351 to end that practice. See id. at 917.

### B. Plaintiff's Three Causes of Action

While section 351 addresses tip pooling and tip credits, it does not provide a private right of action. Lu v. Hawaiian Gardens Casino, Inc., 50 Cal. 4th 592, 603 (2010). Hence, Plaintiff brings his claims on other grounds. The court addresses Plaintiff's three causes of action in the order he presents them.

### 1. Conversion

Plaintiff's first cause of action is for conversion, (Doc. No. 36 at 19), for which he seeks punitive damages, (id. at 24, ¶ 3). "Conversion is the wrongful exercise of dominion over the property of another." Welco Elecs., Inc. v. Mora, 223 Cal. App. 4th 202, 208 (2014), reh'g denied (Feb. 19, 2014). The elements of conversion are: "(1) the

6

plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." Id. "Money may be the subject of conversion if the claim involves a specific, identifiable sum." Id.

In Avidor v. Sutter's Place, Inc., 212 Cal. App. 4th 1439, 1452–53 (2013), the California Court of Appeal addressed a conversion claim in a tip-pooling case. The court held that casino dealers could not assert a conversion claim "without a threshold showing that the money in the tip pool belonged to them. It did not." Id. at 1453. "The dealers acknowledged and agreed to the condition of employment that they would . . . contribut[e] a specified amount of their accumulated tips to the tip pool. They understood that this amount was not going to be returned to or kept for them, but would be distributed to other casino employees." Id. "Because this arrangement did not violate section 351, the trial court correctly determined, based on undisputed facts, that the dealers did not have ownership or possessory rights in that money." Id. Avidor is therefore consistent with other California cases holding that a tip is not the server's personal property, but instead the property of all employees involved in serving the patron, see, e.g., Leighton, 219 Cal. App. 3d at 1069–70, and as long as the tip pool is lawful, there can be no claim for conversion.

Avidor applies here. Because, as discussed below, Plaintiff has failed to state a claim that Benihana violated section 351, Plaintiff cannot allege an ownership or possessory interest sufficient to support a claim for conversion. Consequently, the court dismisses Plaintiff's first cause of action.

## 2.    Violation of section 17200

Section 17200, California's unfair competition law, "prohibits any unfair competition, which means 'any unlawful, unfair or fraudulent business act or practice.'" In re Pomona Valley Med. Group, 476 F.3d 665, 674 (9th Cir. 2007) (quoting Cal. Bus. & Prof. Code § 17200, et seq.). Section 17200 "borrows violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful

1  practices independently actionable under" the section.  Farmers Ins. Exch. v. Superior
2  Court, 2 Cal. 4th 377, 383 (1992).  Section 17200's coverage is "sweeping," and its
3  standard for wrongful business conduct is "intentionally broad."  In re First Alliance
4  Mortg. Co., 471 F.3d 977, 995 (9th Cir. 2006).  Each prong of section 17200 provides a
5  separate and distinct theory of liability.  Lozano v. AT & T Wireless Servs., Inc., 504
6  F.3d 718, 731 (9th Cir. 2007).  "Injunctions are the primary form of relief available under
7  [section 17200] to protect consumers from unfair business practices, while restitution is a
8  type of ancillary relief."  Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 337 (2011).

9      Plaintiff alleges that Benihana's use of the Policy violates section 17200 because it
10 violates Labor Code section 351.  Specifically, Plaintiff argues that the Policy is unlawful
11 as a tip credit scheme, a de facto tip credit scheme, and an unfair and inequitable tip-
12 pooling agreement.  (Doc. No. 39 at 27–28.)  In moving to dismiss this cause of action,
13 Benihana argues that the Policy is not an unlawful tip credit scheme in either sense, is not
14 subject to a reasonableness analysis but is nonetheless reasonable and equitable, and in
15 addition, does not serve to defraud the public.[3]

### a.    Tip Credit Scheme

16
17     Plaintiff claims that, through operation of the Policy, Benihana "obtains an illegal
18 'tip credit' against wages it owes to chefs, bartenders, and bussers."  (Doc. No. 36 ¶ 22.)
19 While California law does prohibit tip credits against the minimum wage, Etheridge, 172

20
21
22
---

23 [3] The court agrees that the Policy does not defraud the public.  As stated in Leighton, "the
24 average diner has little or no idea and does not really care who benefits from the gratuity
he leaves, as long as the employer does not pocket it, because he rewards for good service
25 no matter which one of the employees directly servicing the table renders it."  219 Cal.
App. 3d at 1069.  In line with this reasoning, California courts have consistently held that
26 tip pooling does not operate as a fraud on consumers.  See, e.g., Budrow, 171 Cal. App.
27 4th at 881.  Moreover, considering that, in contrast to a traditional restaurant, Benihana's
teppan and sushi chefs may spend more time directly interacting with customers than do
28 servers, the Policy is not subject to attack as a fraud on the public.

Cal. App. 4th at 914–15, that is not at issue here.  There is no allegation that Benihana pays its employees less than minimum wage.

Instead, Plaintiff's arguments on this point revert back to his general contention that these payments are wages, not tips.  According to Plaintiff, Benihana employs this illegal tip credit, and violates section 351, by "divert[ing] money from its mandatory 'tip pool' to pay sums equal to the percentage of food and drink sales" that Benihana "has promised in wages" to non-servers.  (Doc. No. 36 ¶ 28.)  But Plaintiff no longer alleges that Benihana guarantees these payments regardless of the tips available in the tip pool, and as a result, there is no longer reason to view these payments as "more akin to wages than tips."  Rather, if these payments are made to non-servers using tips in the tip pool, and only when there are sufficient tips to allow for them, then non-servers are merely sharing in and benefitting from tips.  Plaintiff's repeated characterization of those tips as wages,[4] without more, does not alter that conclusion.

///

_____

[4] Despite Plaintiff's stated intent to omit the allegation "that Benihana makes up the shortfall when tips are insufficient to defray the percentage wage payments owed to chefs, bartenders, and bussers" from the TAC, (Doc. No. 39 at 7), he nevertheless argues in his opposition papers that Benihana is indeed "obligated to make the percentage payment[s]," characterizing them as "mandatory" and "not contingent on whether or in what amount guests may leave tips," (id. at 11).  The court finds this contradiction baffling.  And the court finds Plaintiff's theory as to the "workings of Benihana's tip pooling policy," which purports to support that argument, equally baffling.  With no support from the Policy, or even the TAC, Plaintiff suggests that a transaction-by-transaction system applies, and that Benihana carries forward any obligation to non-servers under the policy for as long as it takes to make these "wage" payments.  (Doc. No. 39 at 11–12.)  Yet this is in direct conflict with the language of the Policy itself, which specifically states that "[t]ips pooled shall be calculated daily in accordance with this policy, and distributed no later than on the next business day the employee works."  (See Doc. No. 37-2 at 6).  Regardless, because the TAC purposefully lacks this allegation, this argument is irrelevant, and it does not impact the court's decision that these payments are tips rather than wages.  Plaintiff's other argument on this point, regarding how Benihana incentivizes and rewards seniority in teppan chefs, (see Doc. No. 39 at 12–13), is also irrelevant.

### b.    De Facto Tip Credit Scheme

Plaintiff also argues that the Policy operates as a de facto tip credit scheme. Plaintiff asserts that in a de facto tip credit scheme, "an employer uses money taken from a tip pool to subsidize the sub-market wage paid to employees who ordinarily would not receive tips. . . . The employer thereby lowers their payroll expenses and yet is still able to attract and retain qualified employees." (Doc. No. 39 at 16.)  According to Plaintiff, Benihana uses the Policy to subsidize the sub-market wages of its teppan chefs, as evidenced by the fact that it starts both highly sought-after teppan chefs and supposedly less desirable kitchen chefs at the same pay.  (Id. at 16–18.)

In support of this argument, Plaintiff cites one line of dicta from Etheridge, in which the Second District of the California Court of Appeal opined that "when considering tip pooling, it is important to make certain that the employer is not using the tip pool as a de facto tip credit against market wages."  172 Cal. App. 4th at 915. Because it is only one sentence and untethered to the issues involved in the case, it is unclear exactly what the Etheridge court meant when it made that statement.  Most likely (though it could have used more precise language), the court meant that an employer cannot use tip-pool funds to pay wages owed.[5]  For the reasons discussed in the previous section, that is not at issue here.  It is highly unlikely the court meant that tips cannot be used to bring an employee's overall compensation up to market level when the employer otherwise meets its minimum wage obligations, as that proposition receives no support elsewhere in California law.

Indeed, in the eight years since Etheridge was decided, no court has cited the case for that proposition.  This is perhaps not surprising given that "case law [before Etheridge] demonstrates section 351 was enacted to prevent an employer from using the employee's tips to reduce the employer's minimum wage obligation."  Etheridge, 172

---

[5] It is also possible that the court intended the statement to apply only to market wages imposed as a result of collective bargaining or some other contractual obligation.

Cal. App. 4th at 930 (Klein, P.J., concurring in part and dissenting in part) (emphasis added).  "Prior to Leighton, decisions focused on whether this section prohibits employers from using an employee's tip income to discharge the employer's obligation to pay an employee the minimum wage."  Id. (emphasis in original).  In Industrial Welfare Commission v. Superior Court, 27 Cal. 3d 690, 730 (1980), the California Supreme Court held that Labor Code section 351 required "that tips received by an employee . . . not reduce an employer's minimum wage obligation, either directly or indirectly."  In Henning v. Industrial Welfare Commission, 46 Cal. 3d 1262, 1278–79 (1988), the California Supreme Court struck down a regulation establishing a lower minimum wage for employees who receive tips than for those who do not because it violated Labor Code section 351.

Thus, even if the Etheridge court did intend its statement as Plaintiff suggests, this court disagrees that it is a valid statement of California law, and believes the California Supreme Court would disagree, as well.  See Vestar Dev. II, LLC v. Gen. Dynamics Corp., 249 F.3d 958, 960 (9th Cir. 2001) ("When interpreting state law, federal courts are bound by decisions of the state's highest court.  In the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance.").

Furthermore, the speculative harm to which Etheridge's dicta appears to apply—"a situation in which a tip-crediting employer: (1) requires tipped employees to submit to the tip pool all tips received in excess of the amount necessary to guarantee that the employee receives the equivalent of minimum wage; and (2) uses the tip pool and the tip credit to avoid paying all of its non-tipped employees minimum wage as well," 172 Cal. App. 4th at 915—is not present in this case.  In short, Etheridge does not persuade the court on this point.

Plaintiff does not rest his entire argument on Etheridge, however.  He also claims that by its plain language section 351 prohibits tips credits against market wage—not just

minimum wage.  Section 351 states that no employer may "deduct any amount from wages <u>due an employee</u> on account of a gratuity . . . ." Cal. Labor Code § 351 (emphasis added).  In contrast to minimum wage, prevailing market rates are not wages "due an employee."  And as discussed above, no court has held as much.  Thus, the court finds that the plain language of section 351 does not assist Plaintiff.

Finally, the court rejects Plaintiff's (similar) argument that the Policy is unlawful because it works to lower Benihana's payroll expenses.  It simply cannot be the case that a tip pool is invalid because it lowers an employer's payroll expenses.  There are any number of jobs that allow employers to pay employees less, and therefore spend less on payroll, because those employees will receive, or share in, tips.  At a minimum, accepting this argument would call into question almost all tip pools, if not the practice of tipping itself.

For all these reasons, the court finds that the Policy does not serve as an unlawful de facto tip credit.

### c.     Fair and Equitable Considerations

Lastly, Plaintiff alleges that, whether or not the Policy serves as an unlawful tip credit, it violates section 351 because it is unreasonable and inequitable.  (Doc. No. 36 ¶¶ 33–36.)  Plaintiff points out that the "very purpose of tip pooling is to ensure an equitable sharing of gratuities in order to promote peace and harmony among the employees and provide good service to the public," (<u>id.</u> at ¶ 25), and argues that the Policy contravenes this purpose by taking too much from, and placing all the risk on, servers.[6]

In response, Benihana points out that section 351 does not require a tip-pooling policy to "equitably distribute tips to employees," nor "specify what constitutes a 'reasonable' percentage 'tip out' from a tip pool." (Doc. No. 37-1 at 13.)  Instead,

---

[6] Plaintiff also argues that Benihana is not complying with its own pledge, as the Policy itself calls for equitable sharing of tips.  (Doc. No. 36 ¶ 34.)  But Plaintiff alleges violations of California law in this case, not breach of contract.

section 351 "only requires that employees, not employers or their agents, share in the pool." (Id.)  Benihana also argues that, even if Plaintiff can assert the claim on this basis, the Policy is fair.  According to Benihana, "[t]he pool fairly rewards employees in direct proportion to their service.  The teppan chefs and sushi chefs may spend more time directly interacting with customers than the servers do because of the unique situation found in teppanyaki and sushi restaurants, unlike a typical restaurant where the cooking is all done in the kitchen." (Id. at 17.)

Like the parties to this case, California appellate decisions have also disagreed about whether tip-pooling policies must be inherently equitable.  On the one hand, the court in Grodensky v. Artichoke Joe's Casino, 91 Cal. Rptr. 3d 732, 742 (2009), depublished by grant of review and overturned on other grounds, 211 P.3d 1061 (Cal. 2009), noted that "Labor Code section 351 does not address . . . equitable considerations . . . ." Id. at 770.  As such, the court believed it was not its role "to add language to statutes and to create duties or obligations that are not set forth in the statute.  Thus, even if [the employer's] distribution of the gratuities among the various employees was not equitable, such an action did not violate Labor Code section 351." Id. at 770–71.

On the other hand, the concurrence in Etheridge, 172 Cal. App. 4th 908, which was decided only two weeks after Grodensky, suggests that a cause of action for an unfair or inequitable tip pool "may be asserted in a proper case." Id. at 926 (citing Leighton's directive that tips must be "equitably distributed" among employees).  Even there, though, the concurring judge "recognize[d] that such a cause of action would implicate serious policy concerns.  The courts are ill-equipped to determine whether, for example, bussers at a particular restaurant provide 5% or 10% of the service received by a patron, and are even less equipped to determine whether a specific busser earned his or her specific share." Id. at 927 (emphasis in original); see also Budrow v. Dave & Buster's of California, Inc., 171 Cal. App. 4th 875, 882 (2009) ("It is in the nature of a tip pool that it is based on the general experience of each particular establishment, that it is only broadly

predictive of the reasons for and the patterns of tipping in that particular restaurant and that, in the final analysis, this is the best that anyone can do.").

Here, without excluding the possibility that a cause of action for an unfair or inequitable tip pool "may be asserted in a proper case," the court finds that this is not that case.

For one thing, the Policy does not strike the court as obviously and unquestionably unfair. In his letter to the Labor and Workforce Development Agency, which he attached as Exhibit A to the TAC, (Doc. No. 36-1), Plaintiff provided the following breakdown:

> For example, on March 13, 2016, Employee had $556.30 in food sales from the teppan table, $24.65 in liquor, beer, and wine sales, and $4.50 in sushi sales, for a total of $585.45 in sales. Employee made a total of $101.33 in tips (after adjustments called 'voids' and 'total comps'). Employee thus earned an overall tip of 17% ($101.33 in tips from $585.45 in total sales), right around the average 15–20% in tips. Pursuant to Benihana's tip credit scheme, however, Employee was obligated to and did pay: 8.5% of those teppan sales to the teppan chef, a total of $47.29; 1% of teppan sales and sushi sales to the busser, a total of $5.61; 4.5% of liquor, beer, and wine sales to the bartender, a total of $2.46; and 4% of sushi sales to the sushi chef, a total of $0.18. In total for his shift on March 13, 2016, Employee paid $55.54 to other employees, which constitutes 54.8% of the tips he earned. Employee only got to keep $45.79 out of his $101.33 in tips, a paltry 45.2% of his total tips and only 7.8% of total sales.

Plaintiff provided a similar example in paragraph 36 of the TAC. In that instance, Plaintiff made $1,381.53 in sales and $154.82 in tips, but after distributions pursuant to the Policy, took home only $45.73 in tips.

The court initially notes that these are not likely representative examples of the day-to-day operation of the Policy. With respect to the first example, for instance, it is hard to believe that Plaintiff would have many shifts where he does over $550 in teppan sales (for which he tips out the greatest percentage) and not even $25 in alcohol sales (for which he tips out a much lower percentage). On most days, when the balance of teppan

14

to alcohol is presumably more even, Plaintiff will take home a larger share of the tips. Still, given that teppan accounted for nearly 95% of Plaintiff's sales during that shift, the court cannot say that it is plainly unacceptable for the individuals responsible for the tableside preparation of that teppan to receive 47% of those tips.

This analysis elucidates the more fundamental reason judicial intervention is not appropriate here: it is impossible for the court to declare what is or is not fair in the specific context of Benihana's restaurants.  While Plaintiff may have preferred to keep a larger share of tips, an employer has wide latitude in devising tip-pooling policies to meet its business needs.  <u>Leighton</u>, 219 Cal. App. 3d at 1071 (upholding employer's right to "exercise control over its business to ensure an equitable sharing of gratuities").  Indeed, "[i]t is the nature of a tip pool that it is based on the general experience of each particular establishment . . . It is simply not possible to devise a system that works with mathematical precision and solomonic justice in each one of the millions of transactions that take place every day."  <u>Budrow</u>, 171 Cal. App. 4th at 882 ("Given that restaurants differ, there must be flexibility" in constructing a tip pool).

In the end, although the Policy may not be perfect, Plaintiff does not allege that it has ever left him without tips after a shift, (<u>see generally</u> Doc. No. 36), and it does not require servers to go into their own pocket for contributions, (<u>see</u> Doc. No. 37-2 at 10).  Absent this sort of obvious unfairness, the court is in no better position than Benihana to dictate how the Policy should operate, and attempting to do so would implicate serious policy concerns.  As "the statutory touchstone is whether the gratuity has been 'paid, given to, or left for' the employee or employees," <u>Budrow</u>, 171 Cal. App. 4th at 882, not whether the tip-pooling arrangement receives all employees' approval, the court should not and will not substitute its judgment for Benihana's in this case. [7]  Accordingly, the

_____

[7] As Benihana points out, no court has invalidated a tip-pooling policy simply because contributions are based on a percentage of sales rather than tips.  To the contrary, the California Court of Appeal has upheld a tip-pooling policy that was based on a percentage of sales, although it did not address that issue in its opinion.  See <u>Budrow</u>, 171

court finds that Plaintiff has failed to state a claim that the Policy violates section 351 on the basis of unfairness.

### 3.     Claim for PAGA penalties

Plaintiff's claim for PAGA penalties is derivative of his claim that Benihana violated section 351.  See Cal. Lab. Code § 2699.5; Etheridge, 172 Cal. App. 4th at 911 n.6.  Consequently, the court dismisses Plaintiff's third cause of action.

### CONCLUSION

For the foregoing reasons, the court grants Benihana's motion to dismiss in its entirety.  As the filing of a fourth amended complaint would be futile, the court dismisses the TAC with prejudice, and without leave to amend.  See WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc., 655 F.3d 1039, 1058 (9th Cir. 2011) ("District courts have broad discretion in deciding whether to grant leave to amend and whether to dismiss actions with or without prejudice.").  The Clerk of Court is directed to close the file.

IT IS SO ORDERED.

DATED: February 28, 2017

JEFFREY T. MILLER
United States District Judge

_____

Cal. App. 4th at 878 (approving tip-pooling policy giving one percent of gross sales to bartenders).  Similarly, the Court of Appeal has upheld policies that require employees to contribute to the tip pool whether or not they receive tips.  See Avidor, 212 Cal. App. 4th at 1443 (approving tip pool requiring casino dealers to contribute a set dollar amount per hour, whether or not they received tips during that time); Grodensky, 91 Cal. Rptr. 3d at 742 (same).  Based on these precedents, Benihana's use of net sales in the Policy does not by itself violate section 351.